AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of West Virginia



In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Subject Cell Phone more fully described in Attachment A (incorporated by reference).

)
)
)   Case No. 2:20-mj-00009
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Southern_____ District of _____West Virginia_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 2252 and 2252A | Offenses related to transporting, receiving, distributing and possessing child pornography. |

The application is based on these facts:

See Attachment Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Todd A. Berry, SA, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Jan 27, 2020

_____
*Judge's signature*

City and state: Charleston, WV        Dwane L. Tinsley, United States Magistrate Judge
*Printed name and title*

**ATTACHMENT A**

**PROPERTY TO BE SEARCHED**

The property to be searched is one (1) Iphone Pro Max 11 cellular telephone, bearing International Mobile Equipment Identity ("IMEI") number 353896100888415 and Mobile Station International Subscriber Directory Number ("MSISDN") 13049609130, (the "subject cell phone"), Serial number FK2ZCH2VN70H.  The subject cell phone is currently located at the FBI Charleston Resident Agency in Charleston, West Virginia.

**ATTACHMENT B**

**ITEMS TO BE SEIZED**

All records on the subject cell phone described in Attachment A, that is, one (1) Iphone Pro Max 11 cellular telephone, bearing International Mobile Equipment Identity ("IMEI") number 353896100888415 and Mobile Station International Subscriber Directory Number ("MSISDN") 13049609130, (the "subject cell phone"), Serial number FK2ZCH2VN70H that relate to violations of 18 U.S.C. §§ 2252, and 2252A, including:

1. All visual depictions of children engaging in sexually explicit conduct, as defined in 18 U.S.C. § 2256, or child erotica.

2. Any materials which indicate contact with children.

3. Any and all evidence of passwords needed to access the subject cell phone.

4. Any and all records, showing dominion, ownership, custody, or control over the subject cell phone.

5. Any and all list of names, telephone numbers, and addresses.

6. Any and all names of persons contacted.

7. Images, pictures, photographs sent or received.

8. The content of any and all text messages sent or received.

9. The content of any and all voice mail messages.

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT

I, TODD A. BERRY, being duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property, a cellular telephone, which is currently in law enforcement possession, and the extraction of electronically stored information from that property described in Attachment B.

### BACKGROUND OF AGENT

2. I am currently employed as a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed for over ten years. I am currently assigned to the Huntington, West Virginia, Resident Agency of the Pittsburgh Division, in the Southern District of West Virginia. As a Special Agent, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States. During the course of my employment with the FBI, I have participated in several investigations involving the Internet, email and electronically transferred files. I have investigated violations of federal law, including child sex trafficking, and the online exploitation of minors, particularly in relation to violations of Title 18, United States Code,

Sections 1591(a), 2251, 2252, and 2252A. I have participated in the execution of search warrants involving child exploitation and child pornography offenses, and the search and seizure of computers and other digital devices related to those offenses. I work with other federal, state, and local law enforcement personnel in the investigation of crimes involving child sex trafficking and the sexual exploitation of children.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### IDENTIFICATION OF THE PROPERTY TO BE EXAMINED

4. The property to be searched is one (1) Apple Iphone Pro Max 11 cellular telephone, bearing International Mobile Equipment Identity ("IMEI") number 353896100888415 and Mobile Station International Subscriber Directory Number ("MSISDN") 13049609130, (the "subject cell phone"), Serial number FK2ZCH2VN70H. The subject cell phone is currently located at the FBI Charleston Resident Agency in Charleston, West Virginia. Through my involvement in this investigation, I know that the subject cell phone has been stored in a manner in which its content is, to the extent material to the investigation, in substantially the same state as it was when the subject cell phone first came into the custody of the FBI. It came into the FBI's possession in the following way: during an audio recorded interview Nicholas Wadman ("Wadman") while admitted in the Eastern State

Hospital located at 1350 Bull Lea Road, Lexington, Kentucky 40511, on January 15, 2020, gave verbal consent for the FBI to take custody of his phone to search the contents for the purpose of locating evidence related to an investigation of a violation of 18 U.S.C. § 875(c) (Interstate transmission of a communication containing a threat to injure the person of another). Wadman also signed written consent for the Eastern State Hospital to release his phone from his personal belongings to the FBI. Wadman's phone was transported to FBI Headquarters in Quantico, Virginia, to extract the data from the phone due to that facility possessing the only method available to extract data from an Iphone 11 for the purpose of preserving the evidence on the phone. Once the data was extracted, it was transported back to FBI Charleston to a Senior Forensic Examiner to parse the data to be reviewed. The Senior Forensic Examiner then generated a report for the case agent to review and went back to the original parsing to identify IMEI, MSISDN and user accounts. The Senior Forensic Examiner began reviewing graphics and noted pornographic images appearing to be underage females. The Senior Forensic Examiner requested an FBI agent (outside of the investigation) to observe the images for his opinion. At this time, the review was stopped and an FBI Supervisor was notified. Therefore, while I believe the FBI has the necessary authority pursuant to the aforementioned consent to examine the subject cell phone, I seek this additional warrant out of an abundance of caution to be certain that an examination of the subject cell phone

3

will comply with the Fourth Amendment and other applicable laws. The applied-for warrant would authorize the forensic examination of the subject cell phone for the purpose of identifying electronically stored data particularly described in Attachment B.

## STATUTORY AUTHORITY

5.  This investigation concerns violations of 18 U.S.C. §§ 2252 and 2252A, relating to material involving the sexual exploitation of minors as follows:

   a. 18 U.S.C. § 2252(a)(1) prohibits knowingly transporting or shipping, using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means including by computer or mails, any visual depiction of minors engaging in sexually explicit conduct.

   b. 18 U.S.C. § 2252(a)(2) prohibits knowingly receiving or distributing, any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or through the mails, if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct and the visual depiction is of such conduct.

   c. 18 U.S.C. § 2252(a)(4) prohibits knowingly possessing or knowingly accessing with intent to view, one or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been shipped or transported using any means or facility of

        interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means, including by computer, if the producing of such visual depiction involved the use of a minor engaging in sexually explicit conduct and the visual depiction is of such conduct.

    d.    18 U.S.C. § 2252A(a)(2)(A) prohibits knowingly receiving or distributing any child pornography that has been mailed, or using any means or facility or interstate commerce, shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

    e.    18 U.S.C. § 2252A(a)(2)(B) prohibits knowingly receiving or distributing any material that contains child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

    f.    18 U.S.C. § 2252A(a)(5)(B) prohibits a person from knowingly possessing or knowingly accessing with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, shipped, or transported using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer.

### **DEFINITIONS**

6.    The following definitions apply to this Affidavit and Attachment B:

    a.    "Child Erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily, in

   and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

b.  "Child Pornography" includes any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. *See* 18 U.S.C. § 2256(8).

c.  "Minor" means any person under the age of 18 years. *See* 18 U.S.C. § 2256(1).

d.  "Sexually explicit conduct" applies to visual depictions that involve the use of a minor engaged in sexually explicit conduct, *see* 18 U.S.C. § 2256(8)(A), or that have been created, adapted, or modified to appear to depict an identifiable minor engaging in sexually explicit conduct, *see* 18 U.S.C. § 2256(8)(C). In those contexts, the term refers to actual or simulated (i) sexual intercourse (including genital-genital, oral-genital, or oral-anal), whether between persons of the same or opposite sex; (ii) beastiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person. *See* 18 U.S.C. § 2256(8)(A).

e.  "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format. *See* 18 U.S.C. § 2256(5).

f.  Commercial Sex Act: Any sex act, on account of which anything of value is given to or received by any person.

g.  Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

h.  Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

i.  Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital

        data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

j.    GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

k.    PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

  1. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

  7. Based on my training, experience, and research, I know that the subject cell phone has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. Further based upon my training and experience, I know that data stored on devices of this type can reveal, among other things, who has possessed or used the subject cell phone.

## CELL PHONE STORAGE AND FORENSIC ANALYSIS

  8. Based on my knowledge, training, and experience, I know that cell phones can store information for long periods of time. This information may include sites visited or data accessed via the Internet, which can sometimes be recovered using forensics tools.

  9. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in the warrant, but also forensic evidence that establishes how the subject cell phone was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the subject cell phone because:

a.  Data on a cell phone can provide evidence of a file that was once on the cell phone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.  Forensic evidence on a cell phone can also indicate who has used or controlled the cell phone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how a cell phone works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how the cell phone was used, the purpose of its use, who used it, and when.

d.  The process of identifying the information used to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a cell phone is evidence may depend on other information stored on the cell phone and the application of knowledge about how a cell phone functions. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a cell phone was used, who used it, and when, sometimes it is necessary to establish that certain data is not present on a cell phone.

f.  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the instant warrant would permit the examination of the subject cell phone. The examination may require authorities to employ techniques, including but not limited to, computer-assisted scans of the entire medium that might expose many parts of the subject cell phone to human inspection in order to determine whether it is evidence described by the warrant.

10. Because this warrant seeks only permission to examine the subject cell phone already in law enforcement's possession,

10

the execution of this warrant does not involve the physical intrusion onto a premises. Therefore, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

**BACKGROUND OF INVESTIGATION AND PROBABLE CAUSE**

11. On January 13, 2020, Special Agent Todd A. Berry ("SA Berry") was notified of a threat of violence complaint at Marshall University located in Huntington, West Virginia. After arriving at Marshall University Police Department ("MUPD"), SA Berry met with three cooperating witnesses ("CW-1," "CW-2," "CW-3," or collectively "CW's") regarding the threat. These witnesses were all playing a game with Wadman called "Drawful" utilizing the "Jackbox.tv" platform. The concept of the game is for players to draw pictures on their phones and then submit them to the game. Once submitted, the game randomly sends each player's picture to another player in the group where that player picks one of three pictures drawn by the other players. Once the player picks one of the pictures, he or she then writes a slogan for the picture. During the game on or about January 8, 2020, Wadman's picture was not selected by another player and he became upset after the game concluded. According to the CW's, Wadman commented that his picture was not picked and when asked what he drew, Wadman said it was of a person shooting a group of people at Marshall University with the date January 13, 2020. Wadman then giggled and commented

11

"the student center is lit." The CW's perceived Wadman's comments as threatening and reported it to MUPD.

12. CW-1 further reported that during a previous conversation after Thanksgiving 2019 with Wadman, Wadman told him a shotgun with an extended barrel would be the best gun to use in a school shooting because of the range and how the rounds would spread out. Wadman told CW-1 that his family members were talking about it during their hunting trip

13. On January 15, 2020, SA Berry interviewed Wadman after advising him of his Miranda Rights which he acknowledged and signed. Wadman admitted while playing a game possibly called "Drawful," that he drew "Marshall University". Wadman stated he "tried to create a setting of the student center with some graphic stuff to it that depicted violence." Wadman further stated "he thought he drew a stick figure with a gun" and there might have been a date on it.

14. Wadman gave verbal consent for the FBI to take custody of his phone and search the contents for the purpose of locating additional evidence relating to the threat. Wadman's phone was transported to FBI Headquarters in Quantico, Virginia to extract the data from the phone for the purpose of preserving the evidence. Once the data was extracted, a Senior Forensic Examiner began to parse the data to be reviewed. The Senior Forensic Examiner then generated a report for the case agent to review and went back to the original

12

parsing to identify IMEI, MSISDN and user accounts. While attempting to identify user accounts, the Senior Forensic Examiner observed pornographic images appearing to be underage females. One particular photograph depicted a nude female believed to be underage wearing a mask with a flat chest lying on her back with a male penis inserted into her vagina. The Senior Forensic Examiner requested an FBI agent (outside of the investigation) to observe the images for his opinion and he concurred that the image depicted an underage female performing a sexual act. At this time, the review was stopped and an FBI Supervisor was notified.

### CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS

15. Based upon my knowledge, experience, and training in criminal investigations, and the training and experience of other law enforcement officers trained in child exploitation and child pornography investigations with whom I have had discussions, there are certain characteristics common to individuals involved in the possession, receipt, and distribution of child pornography:

   a. Child pornography collectors may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

   b. Collectors of child pornography may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Child pornography

13

collectors oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c. Child pornography collectors typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d. Likewise, collectors of child pornography often maintain their collections that are in a digital or electronic format in a safe, secure and private environment. These collections are often maintained for several years and are kept close by, usually at the collector's residence, to enable the collector to view the collection, which is valued highly.

e. Child pornography collectors also may correspond with an/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f. Collectors of child pornography prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

g. Further, it is common for such users to save and transfer the pornographic images and/or pornographic video of children form one computer to another because the images are generally difficult to obtain securely.

16. Based on the aforementioned factual information, your Affiant respectfully submits there is probable cause to believe violations of 18 U.S.C. §§ 2252, and 2252A have been committed and that evidence of those violations is contained on the subject cell phone.

17. Based on the foregoing, your Affiant respectfully requests that this Court issue a search warrant authorizing the examination of the subject cell phone described in Attachment A to seek the items described in Attachment B.

_____
TODD A. BERRY
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Subscribed and sworn to before me on the 27th day of January, 2020.

_____
DWANE L. TINSLEY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA